**SIGNED THIS: November 14, 2005**

                                          _____
                                              **MARY P. GORMAN**
                                          **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

```
In Re                            )
                                 )   In Bankruptcy
TIMOTHY J. CLARKE and            )
REBECCA L. CLARKE,               )   Case No. 05-71071
                                 )
          Debtors.               )
_____  )
                                 )
JEFFREY D. RICHARDSON,           )
   Trustee,                      )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   Adversary No. 05-7151
                                 )
TIMOTHY J. CLARKE and            )
REBECCA L. CLARKE,               )
                                 )
          Defendants.            )
```

## O P I N I O N

The issue before the Court is whether the Debtors should be

denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B) and § 727(a)(4) for concealing an ownership interest in a mobile home and the rental income from the mobile home.

The Debtors - Timothy and Rebecca Clarke - filed a petition pursuant to Chapter 7 of the Bankruptcy Code on March 8, 2005. The Debtors were living in a mobile home in Windsor, Illinois, which they leased from John Armstrong. Windsor, Illinois is in Shelby County. Mr. Clarke was working as a truck driver for Hogan Transports and Ms. Clarke was working as a CNA for Sullivan Healthcare.

In 2003, Mr. Clarke was operating a handyman business which he called Handyman Excursions. In the summer of 2003, Mr. Clarke did some work for Jennifer Fleshner. Instead of paying Mr. Clarke for his labor, Ms. Fleshner transferred a mobile home to him. The mobile home was titled in the name of Kathryn Ausmus, but Ms. Ausmus had assigned the title to Ms. Fleshner. On July 9, 2003, Ms. Fleshner signed a power of attorney which authorized Mr. Clarke to sign all papers and documents necessary to transfer title to Mr. Clarke.

The mobile home is located at Lot #41 in the Nichols Mobile Home Park in Sullivan, Illinois. Sullivan is in Moultrie County. Ken Nichols owns the mobile home park.

Mr. Clarke never sent the title work into the Illinois Secretary of State in order to transfer the title to the mobile

home into his name.  Nevertheless, he exercised all incidents of ownership with respect to the mobile home.

On July 22, 2003, Mr. Clarke signed a lease with Nichols Mobile Home Park for Lot #41 where the mobile home was located.  In October, 2003, Mr. Clarke signed an Illinois Mobile Home Registration which showed him as the owner of the mobile home located in the Nichols Mobile Home Park.

In October, 2003, Mr. Clarke rented the mobile home to Joe Dringenberg and Lisa Scribner for $275 a month.  (Mr. Dringenberg moved out in 2004).  On July 30, 2004, Mr. Clarke wrote a letter at the request of Ms. Scribner which stated that she was leasing the mobile home at Lot #41 in Nichols Mobile Home Park from him.

Rebecca Clarke was aware of her husband's ownership interest in the mobile home.  Mobile homes do not generate real estate taxes.  Instead, a "Mobile Home Privilege Tax" is assessed against mobile homes.  Ms. Clarke paid the tax bill in 2004.  In September, 2004, Ms. Clarke wrote to Mr. Nichols about paying the lot rent for the mobile home.  When Ms. Scribner made two rent payments in February, 2005, the checks were deposited in Ms. Clarke's account.

The Debtors admitted at trial that Mr. Clarke owned the mobile home in the Nichols Mobile Home Park when they filed their bankruptcy petition and that they both knew it. They did not, however, disclose it in their Statement of Financial Affairs or schedules.  They also failed to disclose the lease of the mobile

home to Ms. Scribner and the rent payments from Ms. Scribner. The Statement of Financial Affairs does not disclose rental income for 2005 even though Ms. Scribner paid $550 of rent in February for the January and February rental payments. Neither Schedule A - Real Property nor Schedule B - Personal Property shows an interest in a mobile home. Schedule G shows the lease of the mobile home that the Debtors lived in, but it does not show the lease with Ms. Scribner. Schedule I does not show any income from the lease with Ms. Scribner.

    The meeting of creditors pursuant to 11 U.S.C. § 341(a) was held on April 12, 2005. The Debtors testified at the meeting, but they did not volunteer any information about the mobile home they owned and rented to Ms. Scribner. At the end of the meeting, Mr. Nichols appeared and stated that the Debtors owned a mobile home in his mobile home park and that they owed him money for lot rent. The Trustee noted that the mobile home was listed by the Debtors, an error that indicates that the Trustee did not grasp that the mobile home that Mr. Nichols was referring to was different from the one the Debtors scheduled. This was the perfect opportunity for the Debtors to explain that there were two mobile homes, one they lived in and rented from Mr. Armstrong and another one that Mr. Clarke owned and rented to Ms. Scribner, but they let the opportunity pass without correcting the Trustee or clarifying the matter.

A discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief.  In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court.  A discharge is only for the honest debtor.  In re Garman, 643 F.2d 1252, 1257 (7th Cir. 1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981).  However, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly construed against objectors in order to grant debtors a fresh start.  In re Johnson, 98 B.R. 359, 364 (Bankr. N.D. Ill. 1988) (citation omitted).  Because denial of discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt non-dischargeable.  *See* Johnson, *supra*, 98 B.R. *at* 367 ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor.") (citation omitted).  The plaintiff has the burden of proving the objection.  *See* Fed.R.Bankr.P. 4005; In re Martin, 698 F.2d 883, 887 (7th Cir. 1983) (the ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff).   The objector must establish all elements by a preponderance of the evidence.  In re Scott, 172 F.3d 959, 966-67 (7th Cir. 1999).

Pursuant to 11 U.S.C. § 727(a)(2), a court will grant a debtor a discharge unless the plaintiff can prove by a preponderance of the evidence that the debtor:

>   (2) with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed --
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
>> (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2).

Denial of discharge under this section requires proof of actual intent to hinder, delay, or defraud a creditor. In re Snyder, 152 F.3d 596, 601 (7th Cir. 1998); In re Krehl, 86 F.3d 737, 743 (7th Cir. 1996); In re Smiley, 864 F.2d 562, 566 (7th Cir. 1989). "[P]roof of harm is not a required element of a cause of action under Section 727." Id. *at* 569. In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's "whole pattern of conduct." In re Ratner, 132 B.R. 728, 731 (N.D. Ill. 1991) (*quoting* In re Reed, 700 F.2d 986 (5th Cir. 1983)). The issue of a debtor's intent is a question of fact to be determined by the bankruptcy judge. *See* Smiley, *supra*, 864 F.2d *at* 566. Actual fraudulent intent can be inferred from extrinsic evidence. Id.; Krehl, *supra*, 86 F.3d *at* 743; In re White, 63 B.R. 742, 744 (Bankr. N.D. Ill. 1986) ("a debtor is unlikely to directly testify that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and

circumstances of a case"). "Thus, where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." Krehl, *supra*, 86 F.3d *at* 744 (citation omitted). "Intent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) (citations omitted).

In order to prevail against a debtor on a § 727(a)(2)(A) claim, a plaintiff must prove two things: (a) the debtor transferred, removed, destroyed, mutilated, or concealed property and, if proven, (b) that the debtor had an intent to hinder, delay, or defraud his creditors.

The Court finds that the Debtors concealed property of the estate with an intent to hinder, delay, or defraud creditors. The Debtors offer the weak excuse that they did not schedule the Moultrie County mobile home because Mr. Clarke was not the titleholder. The Bankruptcy Code is not concerned with the "technicalities of title" when it comes to determining property of the estate. *See* In re Diviney, 211 B.R. 951, 963 (Bankr. N.D. Okla. 1997), *aff'd* 225 B.R. 762 (10th Cir. BAP 1998). Although the bare legal title to the mobile home was in the name of Kathryn Ausmus, Mr. Clarke had, at the very least, an equitable interest in

the mobile home which made it property of the estate.  <u>In re Rutledge</u>, 115 B.R. 344 (Bankr. N.D. Ala. 1990), *aff'd* 121 B.R. 609 (N.D. Ala. 1990).  Mr. Clarke made the lot rent payments for the mobile home, registered the mobile home in his name, paid the taxes on it, and rented it out.  The Debtors knew that the only thing that they had to do to have title to the mobile home transferred into the name of Mr. Clarke was to send in the paperwork which they had in their possession to the Illinois Secretary of State along with a check for the appropriate fees.  Whether the Debtors failed to transfer title to Mr. Clarke because they wanted to save on the filing fee or because they wanted to preserve the "defense" that they did not "own" the mobile home is unclear and, ultimately, irrelevant; the Debtors knew that Mr. Clarke owned the mobile home and failed to disclose his ownership.

The Debtors suggest that they were confused as to how and where to list the mobile home in their Statement of Financial Affairs and schedules.  This is not a valid excuse.  Paragraph 33 of Schedule B provides space for a debtor to schedule "[o]ther personal property of any kind not already listed".  At the very least, Mr. Clarke could have listed his interest in the mobile home there.  The rent from Ms. Scribner should have been listed in Paragraph 2 under "[i]ncome other than from employment or operation of business".  The Debtors knew how to schedule a lease; they listed on Schedule G the lease of the mobile home in which they

-8-

were living.  They should have listed the lease to Ms. Scribner there also.

Mr. Clarke testified that he abandoned the lease with Ms. Scribner when the case was filed, and that he thought that Mr. Nichols would get the mobile home.  Ms. Clarke stated that she thought the mobile home would be surrendered to the Trustee after the case was filed.  However, before property can be abandoned or surrendered, it must first be disclosed.  Nothing in the Debtors' schedules or other pleadings filed suggests any intent to abandon or surrender the mobile home.

The mobile home at the heart of this dispute has limited value.  The Debtors and Mr. Nichols agree that it is worth less than $1,000.  However, debtors have an absolute duty to report whatever interests they hold in property, even if they believe that the assets are worthless or unavailable to the bankruptcy estate. In re Yonikus, 974 F.2d 901, 904 (7th Cir. 1992).

The Trustee made a compelling argument that the limited value of the trailer should not control the outcome of this case.  This court must set high standards for all debtors filing cases in this District.  Accordingly, this court can not condone the intentional failure of these Debtors to disclose a trailer worth $1000 and more than $500 of rental income received just weeks before filing.

All assets and income must be disclosed as required by the Bankruptcy Code and Rules and the Official Forms.  After

-9-

disclosure, debtors are certainly free to express opinions about asset valuation or to point out title problems in an effort to encourage a trustee to abandon back to the debtors assets which may prove to be burdensome to an estate.  Debtors may not, however, unilaterally resolve these types of issues in their own favor and, thereby, rationalize non-disclosure.

The Trustee has met his burden of proof with respect to the elements of § 727(a)(2)(A).  The Debtors should be denied a discharge.

The Trustee also seeks to bar the Debtors' discharge under § 727(a)(2)(B).  The purpose of this provision is to deny a discharge to debtors who fail to disclose transactions regarding their assets subsequent to the filing of the bankruptcy petition. In re Wolmer, 57 B.R. 128 (Bankr. N.D. Ill. 1986).  The Trustee failed to introduce evidence of transactions which occurred post-petition. The Debtors continued the concealment of the mobile home and lease to Ms. Scribner post-petition, but the Court has addressed the concealment of these items in its discussion of § 727(a)(2)(A). Therefore, § 727(a)(2)(B) is inapplicable to the facts in this case.

Section 727(a)(4)(A) of the Bankruptcy Code provides as follows:

> (a) The court shall grant the debtor a discharge unless –
>
> > (4) the debtor knowingly and

>       fraudulently, in or in connection with the
>       case –
>
>           (A) made a false oath or
>       account.

The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. In re Carlson, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999), *aff'd* 250 B.R. 366 (N.D. Ill. 2000), *aff'd* 263 F.3d 748 (7th Cir. 2001). In order to prevail under § 727(a)(4), a plaintiff must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive, and (5) the statement related materially to the bankruptcy case. In re Bailey, 147 B.R. 157, 163 (Bankr. N.D. Ill. 1992). If made with the requisite fraudulent intent, a false statement, whether made in the schedules or orally at a § 341 creditors' meeting, is sufficient grounds for denying a discharge provided it was knowingly made and is material. In re Lunday, 100 B.R. 502, 508 (Bankr. D. N.D. 1989). It is a debtor's role to consider the questions posed on the schedules and at the creditors' meeting carefully and answer them accurately and completely. Id. A debtor's petition and schedules constitute a statement under oath for purposes of a discharge objection under § 727(a)(4). In re Gannon, 173 B.R. 313, 320 (Bankr. S.D. N.Y. 1994).

The Statement of Financial Affairs and schedules filed by the Debtors constitute statements under oath. The Trustee has demonstrated that these statements were false. The Debtors omitted from the Statement of Financial Affairs and schedules any reference to Mr. Clarke's ownership of the Moultrie County mobile home, the lease of the mobile home to Ms. Scribner, and the rental income received from Ms. Scribner. The Debtors admitted that they knew that Mr. Clarke owned the mobile home when they filed their bankruptcy petition.

The Trustee must also prove that the Debtors made the statements with fraudulent intent. To find the requisite degree of fraudulent intent, the Court must find that the Debtors knowingly intended to defraud or engaged in behavior which displayed a reckless disregard for the truth. Yonikus, *supra*, 974 F.2d *at* 905. If a debtor's bankruptcy schedules reflect a "reckless indifference to the truth", then the plaintiff seeking denial of the discharge need not offer any further evidence of fraud. In re Calisoff, 92 B.R. 346, 355 (Bankr. N.D. Ill. 1988). The requisite intent under § 727(a)(4)(A) may be inferred from circumstantial evidence. Yonikus, *supra*, 974 F.2d *at* 905. However, a discharge should not be denied where the untruth was the result of mistake or inadvertence. In re Wheeler, 101 B.R. 39, 49 (Bankr. N.D. Ind. 1989). When a debtor is in doubt concerning disclosure, it is clear that the debtor is obligated to disclose. In re Sapru, 127

B.R. 306, 315-16 (Bankr. E.D. N.Y. 1991).

The Court infers the requisite fraudulent intent from all of the circumstantial evidence. The Debtors knew that Mr. Clarke owned a mobile home and they chose not to list it in their schedules. The excuses offered by the Debtors for this omission were not persuasive. In particular, their reliance on the legal technicality that title to the mobile home was in the name of another individual shows that they were more interested in obscuring rather than revealing the truth. In addition, the Debtors had a chance to come clean at the meeting of creditors when Mr. Nichols brought up the mobile home, but they chose to let the Trustee remain under the mistaken impression that Mr. Nichols was talking about the mobile home in which they lived.

Finally, the Trustee must show that the Debtors' false statements related materially to the bankruptcy case. <u>In re Agnew</u>, 818 F.2d 1284, 1290 (7th Cir. 1987). The test for materiality of the subject matter of a false oath is whether it "bears a relationship to the bankrupt's business transactions or estate, or the existence and disposition of his property." <u>In re Bailey</u>, *supra*, 147 B.R. *at* 162 (citations omitted). A false oath may be material even though it does not result in any detriment or prejudice to the creditor. <u>In re Sicari</u>, 187 B.R. 861, 881 (Bankr. S.D. N.Y. 1994). The false statements and omissions from the Schedules and Statement of Financial Affairs are material to the

bankruptcy case. The Debtors' failure to disclose the mobile home owned by Mr. Clarke and the lease of the mobile home to Ms. Scribner hindered the administration of the estate and obfuscated their true financial situation.

After considering the totality of the evidence, and considering the credibility of the witnesses, the Court finds that the Trustee has proven each element under § 727(a)(4)(A) by a preponderance of the evidence. Therefore, the discharge must be denied.

At the conclusion of the hearing in this matter, counsel for the Debtors requested that the Court review and consider as additional evidence the claim filed in the Debtors' case by Ken Nichols. The Trustee objected arguing that the claim had not yet been allowed and, accordingly, was simply Mr. Nichol's assertion of what was owed to him. The Trustee also objected on the grounds of relevance. The Court reserved ruling on the admissibility of the Nichols claim form. The Court now sustains the Trustee's objection because the claim form provides no evidence relevant to these proceedings.

For the foregoing reasons, the Trustee's objections to the Debtors' discharge under 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A) are sustained, and his objection to the Debtors' discharge under 11 U.S.C. § 727(a)(2)(B) is denied.

This Opinion is to serve as Findings of Fact and Conclusions

of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###